UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
OLD CASTLE HOLDINGS, LTD.,

                        Plaintiff,      **COMPLAINT**

-against-                              **Civil Action No.**

THE REPUBLIC OF ARGENTINA,

                        Defendant.
------------------------------------------X

     Plaintiff, Old Castle Holdings, Ltd., by its attorneys, Moss & Kalish, PLLC, complaining of the defendant, alleges as follows:

     1. Plaintiff, Old Castle Holdings, Ltd. ("Old Castle") is an alien corporation organized and existing under the laws of the Bahamas with its principal place of business in Nassau, Bahamas.

     2. Upon information and belief, defendant, The Republic of Argentina (the "Republic"), is a sovereign nation located in South America.

     3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1330(a).

     4. The prospectus which governs the transaction that is the subject of this litgation, provides, *inter alia*, that in any action which a holder of the Bonds may have based on the Bonds, the Republic will irrevocably submit to the jurisdiction of this Court and will irrevocably waive and agree not to plead any immunity from the

jurisdiction of this Court, including sovereign immunity.

5. Venue is proper in the Southern District of New York pursuant to a forum selection clause in the prospectus pursuant to which the bonds described herein were issued.

6. On or about November 6, 2001 Old Castle purchased $700,000 of government bonds duly issued by the Republic.

7. The bonds purchased pursuant to Paragraph 7 hereof are hereinafter referred to as "the Bonds."

8. The Bonds collectively bear CUSIP No. 040114FC9 and ISIN No. US040114FC91.

9. The Republic's obligations with respect to the purchasers of the bonds acquired by Old Castle is governed by a Fiscal Agency Agreement (the "FAA").

10. The Bonds were issued through various New York based underwriters, including Morgan Stanley Dean Witter, Chase Securities, Inc. and Deutsche Banc Alex Brown.

11. Old Castle purchased the Bonds through an account held at Deutsche Bank (Uruguay).

12. The Bonds provide for payment of interest by the Republic on March 15 and September 15 of each year at the annual rate of 11.375%.

13. The Bonds were due to mature March 15, 2010 at which time the entire principal amount of the Bonds becomes due and payable.

2

14. The Republic failed to make the interest payment due on March 15, 2001, as required by the terms of the Bonds.

15. On or about May 1, 2001 by written notice to defendant's fiscal agent, Old Castle advised the Republic that it was declaring the entire principal amount of the Bonds immediately due and payable.

16. Thereafter, Old Castle initiated legal action against the Republic to collect the bond proceeds, plus interest.

17. On May 27, 2003, the Court entered judgment in the amount of $835,362.50 in favor of Old Castle and against the Republic in the action denominated Old Castle Holdings, Ltd. v. The Republic of Argentina, 02 Civ. 3808 (TPG) (the "Judgment"). A copy of the Judgment is annexed hereto as Exhibit "A."

18. The FAA contains an Equal Treatment Provision which states, in relevant part, as follows:

> a. The Securities will constitute . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves . . . The payment obligations of the Republic under the Securities shall at all times rank at least equally with all of other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).

FAA at ¶1(c) [emphasis supplied].

19. According to the plain language thereof, the Equal Treatment Provision means that the Republic may not make a payment to a holder of External Indebtedness without a ratable payment being made at the

3

same time to Old Castle.

20. In 2005, the Republic restructured its debt by offering a bond exchange to all holders of non-performing external debt (the "2005 Exchange").

21. Upon information and belief, holders of approximately 25% of the Republic's external debt did not participate in the 2005 Exchange ("Non-tendering Bondholders").

22. Old Castle did not participate in the 2005 Exchange.

23. Bondholders who participated in the 2005 Exchange received bonds scheduled to pay semi-annual interest ("2005 Bonds").

24. Upon information and belief, the Republic has paid all interest due on the 2005 Bonds to date.

25. Upon information and belief, the Republic intends to continue paying interest on all 2005 Bonds as it becomes due.

26. In connection with the 2005 Exchange, the Republic enacted, on or about February 10, 2005, Law 26,017 (the "Lock Law"), providing that the "national State shall be prohibited from conducting any type of in-court, out of court or private settlement with respect to bonds" that were eligible to participate in the 2005 Exchange Offer.

27. On or about December 9, 2009, in preparation for another bond exchange in 2010 (the "2010 Exchange"), the Republic enacted Law 26,547, which, inter alia, suspended the Lock Law for purposes of

4

the 2010 Exchange.

28. Law 26,547 also provides that the "Republic of Argentina . . . is prohibited to offer holder of government bonds [including those issued pursuant to the FAA] who may have initiated judicial, administrative, arbitration or any other type of action [to enforce their rights], more favorable treatment than what is offered to those who have not done so." NML Capital, Ltd. v. The Republic of Argentina, 08 Civ. 6978 (TPG), Document No. 202, page 3 (December 7, 2011).

29. Bondholders who participated in the 2010 Exchange received bonds scheduled to pay semi-annual interest (the "2010 Bonds").

30. Upon information and belief, the Republic intends to continue paying interest on all 2010 Bonds as it becomes due.

31. Old Castle did not participate in the 2010 Exchange.

32. On or about August 5, 2008, a company called NML Capital, Ltd. and other holders of defaulted bonds who had not previously secured judgments against the Republic commenced an action in the United States District Court for the Southern District of New York to enforce the Equal Treatment Provision of the FAA.

33. The case is styled NML Capital, Ltd. v. The Republic of Argentina, Case No. 08 Civ. 6978 (TPG) ("the NML Action").

34. In the NML Action, the plaintiffs contended, in essence, that pursuant to the terms of the Equal Treatment Provision, the Republic had no right to pay interest to the Exchange bondholders

unless it at the same time paid the holders of the non-performing external debt (the "FAA bonds") who had not participated in the 2005 Exchange or the 2010 Exchange.

35. At oral argument on NML's motion for summary judgment (Document No. 339 at page 8), the District Court explained as follows:

> [I]t's hard for me to believe that there is not a violation of the [Equal Treatment Provision] accomplished by the congressional legislation in '05 and '10, simply saying that the Republic will not honor these judgments. It is difficult to imagine anything would reduce the rank, reduce the equal status or simply wipe out the equal status of these bonds under the [Equal Treatment Provision] [more than the Lock Law and the Lock Law Suspension] . . . [The Equal Treatment Provision] can't be interpreted to allow the Argentine government to simply declare that **these judgments** will not be paid and that's what they have done.

NML Capital, Ltd. v. The Republic of Argentina, 699 F.3d 246, 254 (2nd Cir. 2012) [emphasis added].

36. The District Court also explained, at oral argument (Document No. 339 at p. 27), as follows:

> The clause exists, it has meaning, and it, in my view, Has been violated by the Republic in the worst, most blatant, way you could violate it, and that is, to have a congressional declaration that these judgments and these obligations will not be paid. How could you reduce the rank, the status, how could you take away the pari passu treatment in any way that is more blatant than that?

37. On appeal, the Court of Appeals held that:

> [T]he judgments of the district court (1) granting summary judgment to plaintiffs on their claims for breach of the Equal Treatment Provision and (2) ordering Argentina to make 'Ratable Payments' to

6

plaintiffs concurrent with or in advance of its payments to holders of the 2005 and 2010 restructured debt are affirmed.

NML Capital, 699 F.3d at 265.

38. On remand from the Court of Appeals for the Second Circuit, the District Court determined that the obligation of the Republic to make "ratable payments" meant that it had to pay each bondholder all that was owed to the holder at the time that the payment was made.

39. The Court of Appeals for the Second Circuit affirmed that holding as well. NML Capital, Ltd. v. The Republic of Argentina, 2013 U.S. App. LEXIS 17645 (2nd Cir. August 23, 2013).

40. Based on the foregoing, the Republic may not make any payment of its External Indebtedness without also making a ratable payment at the same time to each holder of the FAA bonds.

41. Some ten years have passed since Old Castle first obtained the Judgment against the Republic.

42. Despite numerous efforts, Old Castle has not been able to collect on the judgment.

43. Through the passage of the Lock Law, the Republic issued the 2005 Bonds, which carry payment obligations that rank higher than the Bonds in violation of the Equal Treatment Provision.

44. Through the passage of Law 26,547, the Republic issued the 2010 Bonds, which carry payment obligations that rank higher than the Bonds, in violation of the Equal Treatment Provision.

45. The Republic's past payment of interest to holders of 2005 Bonds, while paying nothing to Old Castle, violated the Equal Treatment Provision.

46. The Republic's continuing payment of interest to holders of 2005 Bonds, while paying nothing to Old Castle, will be a continuing violation of the Equal Treatment Provision.

47. The Republic's past payment of interest to holders of 2010 Bond, while paying nothing to Old Castle, violated the Equal Treatment Provision.

48. The Republic's continuing payment of interest to holders of 2010 Bonds, while paying nothing to Old Castle, will be a continuing violation of the Equal Treatment Provision.

49. Based on the foregoing, the Republic has breached the equal treatment provision.

50. Additionally, should the Republic make payments to any holders of the FAA bonds who have not secured judgment, while paying nothing to Old Castle, the Republic will also be in violation of the Equal Treatment Provision.

51. By reason of the foregoing, Old Castle has been damaged as a result of the violation of the Equal Treatment Provision and will continue to be damaged by the continuing violation of the Equal Treatment Provision.

52. Accordingly, the Republic many not make payment of its

External Indebtedness without also making ratable payment at the same time to Old Castle.

53. Based upon the foregoing, the Republic may not make payment of its External Indebtedness without also making ratable payment at the same time to the holders of FAA bonds.

54. Old Castle has suffered irreparable harm from the Republic's violation of the Equal Treatment Provision and will continue to suffer irreparable harm unless the Court specifically enforces that Provision with a mandatory injunction directing the Republic to pay Old Castle ratably whenever it pays interest or principal to the holders of 2005 Bonds or 2010 Bonds.

55. Old Castle has suffered irreparable harm from the Republic's violation of the Equal Treatment Provision and will continue to suffer irreparable harm unless the Court specifically enforces that Provision with a mandatory injunction directing the Republic to pay Old Castle ratably whenever it pays interest or principal to the holders of the FAA bonds.

56. Old Castle has no adequate remedy at law.

57. Old Castle performed under its contract with the Republic.

58. The Republic is capable of performing its obligations pursuant to the Equal Treatment Provision.

59. The balancing of the equities favors the granting of an injunction.

60. The public interest would not be disserved by the issuance of a permanent injunction.

**WHEREFORE**, plaintiff, Old Castle Holdings, Ltd., demands judgment against the defendant, the Republic of Argentina:

a. Specifically enforcing the Equal Treatment Provision;

b. Granting Old Castle a mandatory injunction directing that in the event the Republic makes any payments to the Exchange bond holders, it must contemporaneously pay Old Castle's Judgment, together with accrued interest to the date of payment;

c. Granting Old Castle a mandatory injunction directing that in the event the Republic makes any payments to the FAA bond holders, it must contemporaneously pay Old Castle's Judgment, together with accrued interest to the date of payment;

d. Granting such other and further relief as the Court may deem just and proper, including costs, disbursements and attorneys fees.

Dated: New York, New York
       June 4, 2014

                    Yours, etc.,

                    MOSS & KALISH, PLLC

By: _____
DAVID B. GELFARB
Attorneys for Plaintiff
122 East 42nd Street Ste. 2100
New York, New York 10168
(212)867-4488

clients\OldCastlecomplaint06042014.doc

Exhibit A

DOC # 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OLD CASTLE HOLDINGS, LTD.,  :

               Plaintiff,  :  02 Civ. 3808 (TPG)

    - against -  :  **JUDGMENT**

THE REPUBLIC OF ARGENTINA,  :  # 03/1098

               Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiff, Old Castle Holdings, Ltd., having moved for summary judgment, and the matter having come before the Honorable Thomas P. Griesa, United States District Court, and the Court, on April 14, 2003, having rendered its opinion (88369) granting plaintiff's motion for summary judgment and directing that judgment will be entered for the principal amount of the bonds purchased by plaintiff plus accrued interest, and the Clerk having filed a judgment dated April 16, 2003 (the "April 16, 2003 judgment"); and the Court having issued a Memorandum Order dated May 7, 2003 directing that the April 16, 2003 judgment "should be replaced" and that the amended judgment should "cover all principal and interest due and unpaid, and prejudgment interest on the unpaid amounts";

      NOW, on motion of Moss & Kalish, PLLC, attorney for plaintiff, it is hereby

ORDERED, ADJUDGED AND DECREED as follows:

1. This Court's Judgment entered on April 16, 2003 be and the same hereby is deemed void and of no force and effect.

2. Plaintiff, Old Castle Holdings, Ltd., a corporation organized and existing under the laws of the Bahamas with its principal place of business in Nassau, Bahamas, shall recover of the defendant, The Republic of Argentina, the sum of $700,000 along with interest due and owing on the bonds in the amount of $119,437.50, for a total amount due and owing on the bonds of $819,437.50, along with prejudgment interest from March 16, 2003 through May 28, 2003 in the amount of $15,925.

3. Plaintiff, Old Castle Holdings, Ltd., shall recover from the defendant, The Republic of Argentina, the total sum of $835,362.50.

Dated:   New York, New York
         May 27, 2003

ENTER:

_____
Thomas P. Griesa
United States District Judge


_____
J. Michael McMahon
Clerk of the Court


By: _____
    Deputy Clerk

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON 5/30/03